**ASHEVILLE PAVING COMPANY, a North Carolina Corporation, Plaintiff,**

v.

**BALLENGER PAVING COMPANY, Inc., a South Carolina Corporation, Defendant.**

**Civ. No. 1557.**

United States District Court
W. D. North Carolina,
Asheville Division.

Aug. 21, 1956.

Parker & McGuire, Asheville, N. C., for plaintiff.

Wyche, Burgess & Wyche, Greenville, S. C., Williams & Williams, Asheville, N. C., for defendant.

WARLICK, District Judge.

This action was commenced by the plaintiff to recover the sum of $5,645.15, being the balance alleged to be due it by the defendant. In its answer the defendant denies that it is due the plaintiff such sum and sets up a counter-claim in which it seeks to recover the sum of $4,346.54. Plaintiff is a North Carolina corporation. The defendant is incorporated under the laws of South Carolina. Both plaintiff and defendant are engaged in the general business of paving streets and highways and allied work.

Sometime about the middle of the year 1954 the North Carolina State Highway and Public Works Commission sought bids for paving a certain stretch of highway in Clay County, North Carolina. Defendant being the successful bidder was awarded the contract. Plaintiff had under lease a certain tract of land, conveniently located for this job, from which sand and stone could be obtained, and entered into a verbal contract with the defendant to furnish to it sand and stone, known in the trade as "aggregate", for defendant's use on said job, at the price of $1.50 per ton, delivered to defendant's trucks at plaintiff's crusher site near

Hayesville. Defendant estimated that it would need approximately 12,600 tons of said aggregate, less approximately 1,500 tons which the defendant already had on hand for use on said job.

Thereafter and during the early part of November 1954 plaintiff moved its crusher to the production site under lease and began to furnish said stone and sand to the defendant; loading it on defendant's trucks and when it was conveyed to the mixing plant, was weighed by defendant. Defendant began its road building program shortly after plaintiff began crushing and delivering the aggregate to it.

That on or about December 9, 1954, winter had set in and road building thereupon became impossible and could not be resumed until spring broke. At the time defendant ceased operations on that date plaintiff had furnished defendant 1,842 tons of sand and 1,959 tons of stone. Quarrying and crusher work continued at plaintiff's plant, as weather is no factor in this type of work.

On December 9, when the road construction work ceased, the defendant, acting through its materials foreman, William A. Blue, informed plaintiff's Superintendent Rice that the defendant would need 5,178 tons of sand to complete the job, and would need 2,721 tons of stone, and gave to the plaintiff the following paperwriting, Defendant's Exhibit No. 1, indicating its needs for completing the paving job under construction.

"Dec. 9
| | | | |
|---|---|---|---|
| Sand to date | 1842 ton | Stone to date | 1959 ton |
| Sand total for job | 7020 ton | Stone total for job | 4680 |
| Sand need | 5178 | Stone needed | 2721 tons" |

Plaintiff sought this information for that its quarrying operation at this site was wholly for defendant's benefit and use and since plaintiff desired to stockpile defendant's needs during the winter, the amount deemed necessary was material and such was understood by the defendant's agent, Blue.

Thereupon plaintiff began quarrying the necessary aggregate and stock-piled both sand and stone in excess of the estimate for the use of the defendant under the terms of its verbal contract.

After this stock-piling of material for defendant plaintiff moved its crusher to a site owned by it in Rabun County, Georgia, for the purpose of quarrying stone for a contract had with the Georgia Highway Commission. When paving was resumed on this contract by defendant, plaintiff returned its loader to the quarry site and supplied the defendant with all of the aggregate that had been stock-piled during the previous winter. Sometime thereafter defendant's foreman, William A. Blue, indicated that there was a sufficient amount of stone but that the sand evidently was not sufficient. Then it was that the plaintiff moved its loader across the river, under considerable expense and at much inconvenience and secured all the needed sand to complete the job as it was estimated and then removed all of its remaining machinery to its new location in Rabun County, Georgia.

Plaintiff furnished defendant a total of 12,209.60 tons of aggregate, and was to be paid $1.50 per ton, a total of $18,314.40. On the 18th of June, 1955, plaintiff was paid by defendant the sum of $12,669.25, leaving a net balance due of $5,645.15, the sum sought herein to be recovered.

Evidently the defendant underestimated the amount of material needed by it to complete this job—for after it had used all of the aggregate made available under the contract with plaintiff it found that it would need more stone and sand. Whereupon defendant went into the open market and purchased 1,774.1 tons of aggregate from the Grove-Stone Sand Company, paying the price of $3.95 a ton,—had the same conveyed by rail to Murphy and unloading it at the station, conveyed it to the site of its highway job. Defendant claims this as an additional expense in the total amount of $4,346.54, the amount set out in its counter-claim. The defendant did not

at any. time give plaintiff notice that it was purchasing from Grove-Stone .but did notify. plaintiff that it would need some additional stone and sand and was informed by plaintiff that if such came about that it could, as a convenience, be secured from plaintiff's plant in Georgia. The defendant undertook to secure aggregate from that source but its evidence was to the effect that the roads were difficult to travel on and that a successful haul could not be had on account of the existing detours.

. This case was determined by the court without a jury. Jurisdiction is based on the diversity of citizenship and amount sought in recovery.

Plaintiff contends that the terms of the contract were fixed and certain; that it dealt with figures and estimates with which both parties were acquainted, and that it actually furnished more of the aggregate than the defendant had estimated as its needs. That it did this from an abundance of precaution; that it could easily have quarried much more before having moved its machinery; but that having no use for it over and above the demands of the defendant, that it ceased its operations when the required amount had been stock-piled.

■ Defendant contends that the estimates it made were minimum and that such was understood by the parties; that plaintiff should have so dealt with it and that by not so doing, made it necessary for defendant to purchase its needs elsewhere,—and being so compelled that it is entitled to recover from the plaintiff the amount that it was forced and compelled to pay over the contract price for the aggregate needed in completing the job. Obviously if plaintiff failed to live up to its contract and furnish what it agreed it would, so as to permit defendant to complete the job, the defendant would have the legal right to buy elsewhere and to recover from the plaintiff the amount over and above the contract price that it was compelled to pay. Blalock & Co. v. W. D. Clark, 137 N.C. 140, 49 S.E. 88.

■ Since plaintiff's lease on the site from which the materials were quarried was only a temporary one, and it accordingly secured defendant's estimate of its needs in writing, for the completion of the job, and accordingly got out that much and more of stone and sand, all as was provided in the contract, it would seem that it fully complied with the terms thereof and fulfilled its contract with the defendant accordingly.

I therefore hold that plaintiff is entitled to recover of the defendant the full demand of $5,645.15, together with interest thereon and costs; and that the defendant is not entitled to recover of the plaintiff on its counter-claim.

Submit decree.